No. 23-12533-B

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

PERFECTION BAKERIES, INC.,

Plaintiff-Appellant,

v.

RETAIL, WHOLESALE AND DEPARTMENT STORE
INTERNATIONAL UNION AND INDUSTRY PENSION FUND,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Alabama, Southern Division
The Honorable Annemarie Carney Axon

---

## BRIEF OF DEFENDANT-APPELLEE

---

William Anspach
Friedman & Anspach
1500 Broadway, Suite 2300
New York, New York 10036
(212) 354-4500
wanspach@friedmananspach.com

*Counsel for Defendant-Appellee*
*Retail, Wholesale and Department Store International Union and*
*Industry Pension Fund*

## CERTIFICATE OF INTERESTED PERSONS AND
## <u>CORPORATE DISCLOSURE STATEMENT</u>

In accordance with Fed. R. App. Pro. 26.1 and 11th Cir. Rule 26.1-1, the undersigned counsel for Appellee Retail, Wholesale and Department Store International Union and Industry Pension Fund certifies that the following is a list of all judges, attorneys, persons, firms, associations of persons, partnerships, and corporations currently believed to have an interest in the outcome of this case or appeal, and other legal entities related to a party:

> Anspach, William (Counsel for Defendant/Appellee)
>
> Axon, Annemarie Carney, Hon. (United States District Judge)
>
> Conn Maciel Carey LLP (Counsel for Plaintiff/Appellant)
>
> Friedman, Eugene S. (Counsel for Defendant/Appellee)
>
> Friedman & Anspach (Counsel for Defendant/Appellee)
>
> Maynard Nexsen P.C. (Counsel for Plaintiff/Appellant)
>
> Murphy, Grace (Counsel for Plaintiff/ Appellant)
>
> Neiman, John (Counsel for Plaintiff/Appellant)
>
> Perfection Bakeries, Inc. (Plaintiff/ Appellant)

Rasalingam, Anusha (Counsel for Defendant/Appellee)

Retail, Wholesale and Department Store International Union and Industry Pension Fund (Defendant/Appellee)

Riley, Clyde (Counsel for Defendant/Appellee)

Riley Law Firm (Counsel for Defendant/Appellee)

Trapp, Mark (Counsel for Plaintiff/Appellant)

Treiman, Daniel (Counsel for Defendant/Appellee)

Appellee is not a corporation, and it has no corporate parents (and therefore no publicly held corporation owns its stock).

To the best of Appellee's knowledge, no publicly traded company or corporation has an interest in the outcome of this case or appeal.

/s/ William Anspach
William Anspach

*Counsel for Defendant-Appellee*

C-2 of C-2

## STATEMENT REGARDING ORAL ARGUMENT

Appellee does not desire oral argument and believes that the proper interpretation of the statutory language at issue in this case can be decided based upon the written briefings to the Court.

# <u>TABLE OF CONTENTS</u>

**<u>Page</u>**

STATEMENT OF ISSUE ............................................................ 1

STATEMENT OF THE CASE .................................................. 1

I.  COURSE OF THE PROCEEDINGS BELOW ..................... 3

II. STATEMENT OF FACTS ..................................................... 4

III.  STANDARD OF REVIEW ................................................. 8

SUMMARY OF THE ARGUMENT ......................................... 8

ARGUMENT .............................................................................. 10

I.      THE DISTRICT COURT CORRECTLY FOUND
        THAT THE STATUTORY TEXT IS
        UNAMBIGUOUS .......................................................... 13

      A.      Section 1381(b)(1)(B)'s Second Adjustment
            Includes All Of Section 1386 ................................. 14

      B.      Adding The Section 1386(b) Reduction As A
            Fifth Step  After The Section 1381(b)(1)
            Adjustments Would Be Inconsistent With The
            Statutory Language And Scheme ........................... 19

            1.      The statute does not provide a fifth
                 reduction, and Perfection's
                 misinterpretation would leave the
                 Section 1386(b) reduction orphaned
                 in the overall statutory scheme. .................... 20

i

**TABLE OF CONTENTS**
**(Continued)**

**Page**

      2.    The statute emphasizes the finality of the four-step process for calculating withdrawal liability. ..................................... 21

   C.   Perfection Misconstrues The Relationships Between Key Statutory Terms ............................... 26

      1.    Perfection misunderstands the process for calculating withdrawal liability via the adjustments to unfunded vested benefits. ........................................... 26

      2.    Perfection misinterprets the phrase "in the case of a partial withdrawal". ........................ 30

II.   PERFECTION INCORRECTLY ASSERTS THAT THE DISTRICT COURT'S INTERPRETATION MAKES THE REDUCTION FOR A PRIOR PARTIAL WITHDRAWAL "ILLUSORY" ........................ 36

III.   THE PBGC'S VIEW IS TRUMPED BY THE UNAMBIGUOUS STATUTORY LANGUAGE AND, IN ANY EVENT, IS UNPERSUASIVE ................ 39

CONCLUSION ........................................................................... 43

CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32 ... 44

# TABLE OF AUTHORITIES

**Cases**                                                        **Page**

*Blessitt v. Retirement Plan for Employees of Dixie
Engine Co.*, 848 F.2d 1164 (11th Cir. 1988) ............................. 40

\**Christensen v. Harris County*, 529 U.S. 576 (2000) ............... 40-41

\**GCIU-Emp'r Ret. Fund v. Quad/Graphics, Inc.*,
909 F.3d 1214 (9th Cir. 2018) *aff'g* 250 F. Supp 3d 551
(C.D. Cal. 2017) .......................................................... 2,10-11,
                                                                      13,
                                                                      16-17,
                                                                      21,24,
                                                                      31-33,
                                                                      41

\**GCIU-Emp'r Ret. Fund v. Quad/Graphics, Inc.*,
250 F. Supp 3d 551 (C.D. Cal. 2017) *aff'd* 909 F.3d 1214
(9th Cir. 2018) .......................................................... 2,5-6,
                                                                      10-11,
                                                                      13,41

*Gilbert v. Alta Health & Life Ins. Co.*, 276 F.3d 1292
(11th Cir. 2001) ......................................................... 40

*Gregory v. First Title of America, Inc.*, 555 F.3d 1300
(11th Cir. 2009) ......................................................... 41

*Little Sisters of the Poor Saints Peter & Paul
Home v. Pennsylvania*, 140 S. Ct. 2367 (2020) ........................ 39

*Milwaukee Brewery Workers' Pension Plan v. Jos.
Schlitz Brewing Co.*, 513 U.S. 414 (1995) ................................ 28-29

# TABLE OF AUTHORITIES
## (Continued)

**Page**

*MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312
(11th Cir. 2019) ........................................................... 18,35

*Russello v. United States*, 464 U.S. 16 (1983) ........................... 17-18

**Statutes and Rules**                                    **Page**

29 U.S.C. § 1381 ........................................................ *passim*

29 U.S.C. § 1382 ........................................................ *24*

29 U.S.C. § 1385 ........................................................ 32,34

29 U.S.C. § 1386 ........................................................ *passim*

29 U.S.C. § 1389 ........................................................ *14,19,23,*
*35,36*

29 U.S.C. § 1391 ........................................................ 14,19,23

29 U.S.C. § 1399 ........................................................ *passim*

29 U.S.C. § 1405 ........................................................ *9,15,22*

29 U.S.C. §§ 1001-1461 ................................................. *1*

iv

# TABLE OF AUTHORITIES
## (Continued)

**Regulations**                                                      **Page**

29 C.F.R. § 4206.1(a)......................................................................    42

29 C.F.R. § 4206.3 ........................................................................    38,42

v

## STATEMENT OF ISSUE

Whether the District Court correctly held that the statutory reduction for prior partial withdrawal liability pursuant to 29 U.S.C. § 1386(b)(1) must be applied under 29 U.S.C. § 1381(b)(1)(B) in the four-step statutory process for determining withdrawal liability.

## STATEMENT OF THE CASE

Plaintiff-Appellant Perfection Bakeries, Inc. ("Perfection") is challenging the amount of withdrawal liability that it was assessed by Defendant-Appellee Retail, Wholesale and Department Store International Union and Industry Pension Fund (the "Fund") under the Employee Retirement Income Security Act of 1974, as amended by the Multiemployer Pension Plan Amendments Act ("MPPAA") of 1980, 29 U.S.C. §§ 1001-1461 ("ERISA").

Specifically, Perfection is challenging the Fund's application of the statutory reduction for its prior partial withdrawal liability pursuant to 29 U.S.C. § 1386(b)(1) as part of the statutory adjustment provided for under 29 U.S.C. § 1381(b)(1)(B), which is the second step of the four-step process for determining withdrawal liability. *See* 29 U.S.C. § 1381(b)(1).

In applying Section 1386(b)(1)'s statutory reduction for a prior partial withdrawal at the second step of Section 1381(b)(1)'s four-step process, the Fund was following the methodology endorsed by the U.S. Court of Appeals for the Ninth Circuit in *GCIU-Emp'r Ret. Fund v. Quad/Graphics, Inc.*, 909 F.3d 1214 (9th Cir. 2018), *aff'g* 250 F. Supp 3d 551 (C.D. Cal. 2017) — the only precedent addressing the issue. The Ninth Circuit held that ERISA "unambiguously" requires that the Section 1386(b)(1) reduction for a prior partial withdrawal be applied under Section 1381(b)(1)(B). *Id.* at 1218.

Perfection argues that the statutory reduction for a prior partial withdrawal should instead only be applied after the completion of the entire four-step process for determining an employer's withdrawal liability under 29 U.S.C. § 1381(b)(1). Appellant's Brief ("Br.") p. 22.[1] This would mean that the reduction for the prior partial withdrawal would come after the application of the statutory 20-year cap (29 U.S.C. § 1399(c)(1)(B), which all agree is applied at the third step of Section 1381(b)(1)'s four-step process. 29 U.S.C. § 1381(b)(1)(C). Perfection's

---

[1] References to the Appellant's principal brief use the page numbers that appear in the header generated by this Court's electronic filing system.

methodology would have the effect of substantially decreasing its withdrawal liability, even though the 20-year cap already provided a reduction of Perfection's liability in the amount of nearly $10 million. Dkt. 31-3, pp. 5 and 8; Dkt. 31-4, pp. 5 and 8.[2]

Perfection initiated arbitration to challenge the Fund's assessment of its withdrawal liability, but the arbitrator determined that the Fund had acted correctly in applying the reduction for the prior partial withdrawal at the second step of Section 1381(b)(1)'s four-step process. Dkt. 31-23, p. 37. The arbitrator's finding on this issue was upheld by the District Court below, which likewise held that "the statute unambiguously requires the credit to be applied as part of the second potential adjustment." Dkt. 44, p. 22.

## I.    COURSE OF THE PROCEEDINGS BELOW

Perfection filed suit in the U.S. District Court for the Northern District of Alabama seeking to vacate the arbitrator's decision upholding the Fund's calculation of its withdrawal liability, and the Fund

---

[2] References to the record are to the document number and the page number that appear in the header generated by the District Court's electronic filing system and are presented in this brief in the following format: Dkt. __, p. __, pursuant to 11th Cir. R. 28-5.

counterclaimed seeking enforcement of the arbitrator's award. Dkt. 1 and 14. The parties filed simultaneous motions for summary judgment. Dkt 28 and 29. The District Court denied Perfection's motion for summary judgment while granting the Fund's motion for summary judgment and entering a final judgment enforcing the arbitrator's award in favor of the Fund. Dkt. 45.

## II.    STATEMENT OF FACTS

Perfection was a party to and was bound by collective bargaining agreements with RWDSU locals at facilities in Saginaw, Michigan and Fort Wayne, Indiana. Dkt. 31-23, p. 2, ¶¶ 9 and 11. Pursuant to these agreements, Perfection was obligated to pay and did pay contributions to the Fund on behalf of employees covered by these agreements. Dkt. 31-23, p. 2, ¶¶ 9 and 11. The Fund determined that Perfection had triggered a partial withdrawal on May 14, 2016, and that a complete withdrawal took place on April 17, 2018. Dkt. 31-23, pp. 2-3, ¶¶ 13-14.

On or about December 10, 2018, during a meeting of the Board of Trustees of the Fund, the Trustees determined that withdrawal liability assessments against Perfection should be calculated in a manner

consistent with the Ninth Circuit's 2018 decision in *Quad/Graphics*, 909 F.3d 1214. Dkt. 31-16, p. 2. In particular, "the determination of withdrawal liability in the case of a full withdrawal after a partial withdrawal should be made before any adjustment for the 20-year cap, which differs from prior PBGC guidance and would result in an increase in the assessable amounts for [Perfection]." Dkt. 31-16, p. 2.

On September 11, 2019, the Fund issued two withdrawal liability assessments to Perfection, one for partial withdrawal liability and one for complete withdrawal liability. Dkt. 31-4, pp. 1-3. Attached to each assessment were withdrawal liability calculations (the "Segal Calculations") performed by the Fund actuaries, Segal Consulting ("Segal"), which had been sent by Segal to the Fund on December 18, 2018. Dkt. 31-3, pp. 4-10; Dkt. 31-4, pp. 4-10.

Pursuant to the Segal Calculations, the present value of the partial withdrawal liability was calculated to be $2,228,268. Dkt. 31-3, p. 4; Dkt. 31-4, p. 4; Dkt. 31-23, p. 31, at ¶ 21. The payment schedule with respect to this partial withdrawal, and subject to the 20-year cap, required a quarterly payment of $50,832 for each of 80 quarters. Dkt. 31-3, pp. 4-5; Dkt. 31-4, pp. 4-5.

As for Perfection's complete withdrawal pursuant to the Segal Calculations, the allocable unfunded vested liability prior to a partial withdrawal credit was calculated to be $17,331,978. Dkt. 31-3, pp. 5 and 8; Dkt. 31-4, pp. 5 and 8. The 2016 partial withdrawal liability credit was calculated to be $1,432,238. Dkt. 31-23, p. 3, at ¶ 22; Dkt. 31-3, pp. 5 and 8; Dkt. 31-4, pp. 5 and 8. After application of this credit, the remaining amount was $15,899,740. Dkt. 31-3, pp. 5 and 8; Dkt. 31-4, pp. 5 and 8. After application of the 20-year cap, the resulting amount was $6,318,741. Dkt. 31-3, pp. 5 and 8; Dkt. 31-4, pp. 5 and 8. This meant that Perfection owed a quarterly payment of $144,144 for each of 80 quarters for its complete withdrawal. Dkt. 31-3, pp. 5 and 8; Dkt. 31-4, pp. 5 and 8. With respect to the 2016 partial withdrawal credit, Segal followed the Ninth Circuit's 2018 decision in *Quad/Graphics*, 909 F.3d 1214 — that is, in calculating the complete withdrawal liability, Segal applied the partial withdrawal credit before the 20-year cap and not after it. Dkt. 31-3, pp. 4-5; Dkt. 31-4, pp. 4-5.

On April 6, 2019, Perfection made a timely request for review of the withdrawal liability assessments. Dkt. 31-23, p. 4, at ¶ 24.  On

August 23, 2019, Perfection timely initiated arbitration to challenge the Fund's assessment of its withdrawal liability. Dkt. 31-23, p. 6, at ¶ 26.

On April 18, 2022, the arbitrator issued an Opinion and Award in which he concluded that "the Fund properly applied the credit for the prior Partial Withdrawal in determining Perfection's withdrawal liability for the subsequent Complete Withdrawal." Dkt. 31-34, p. 40.  In his April 18, 2022 Opinion and Award, the arbitrator found in favor of Perfection and against the Fund on a separate issue related to the parties' conflicting interpretations of the Fund's Trust Agreement. Dkt. 31-34, pp. 44-45. As a result the credit for the past partial withdrawal was recalculated to be $1,962,408; however, that recalculation did not affect the assessed amount of withdrawal liability in light of the arbitrator's finding in favor of the Fund on the issue of the proper statutory interpretation. Dkt. 31-34, pp. 45 and 48.

The arbitrator's April 18, 2022 Award ordered Perfection to pay to the Fund quarterly payments of $194,976 for each of eighty quarters, which is the aggregate amount assessed by the Fund for Perfection's May 14, 2016 partial withdrawal and April 17, 2018 complete withdrawal from the Fund. Dkt. 31-34, p. 45.

## III.   STANDARD OF REVIEW

As this case turns entirely on a question of statutory interpretation, the District Court's decision is reviewed *de novo*.

## SUMMARY OF THE ARGUMENT

The District Court correctly held that the relevant statutory provisions unambiguously require that the reduction for an employer's prior partial withdrawal liability pursuant to 29 U.S.C. § 1386(b)(1) must be applied under 29 U.S.C. § 1381(b)(1)(B), the second step of the four-step process determining an employer's withdrawal liability. 29 U.S.C. § 1381(b)(1). Dkt. 44, p. 21. The District Court's holding is consistent with that of every arbitrator and court to address this issue, including a unanimous Ninth Circuit panel.

Section 1381(b)(1)(B) calls for an adjustment "in the case of a partial withdrawal, *in accordance with section 1386 of this title*." 29 U.S.C. § 1381(b)(1)(B) (emphasis added). While Perfection reads this subparagraph to refer only to section 1386(a), there is no basis in the statutory text for removing one of Section 1386's two subsections from Section 1381(b)(1)(B)'s purview.

8

Perfection argues that the reduction for a prior partial withdrawal should be applied only after the completion of Section 1381(b)(1)'s four-step process, but this would unjustifiably create what is, effectively, a fifth step in calculating an employer's withdrawal liability, although no such additional step is referenced anywhere in the statute. This would also undercut the finality of the Section 1381(b)(1) process for determining an employer's withdrawal liability, which the statutory text itself emphasizes. *See* 29 U.S.C. § 1405(a)(1).

Faced with this unambiguous statutory text, Perfection asserts that the District Court failed to grasp the meaning of key statutory terms. However, this is simply a red herring. In particular, the District Court did not fail to distinguish between unfunded vested benefits and withdrawal liability; rather, each step of Section 1381(b)(1) is an adjustment to unfunded vested benefits that operates to reduce withdrawal liability throughout that provision's four-step process.

Perfection also claims that the District Court's holding renders its credit for a prior partial withdrawal "illusory." Appellant's Br. p. 37. However, although the Section 1386(b)(1)(B) reduction was effectively subsumed by a huge reduction in Perfection's liability as a

9

result of the 20-year cap, that will not be the case for all withdrawing employers. Moreover, neither policy considerations nor the particular circumstances surrounding Perfection's withdrawal can rewrite the clear statutory language of Section 1381(b)(1)(B).

Even if the statutory text were found to be ambiguous, the PBGC's opinion letter relied upon by Perfection is entitled only to limited deference. Yet, the District Court (and every other court) has found the letter to be wholly unpersuasive. Dkt. 44, p. 28; *Quad/Graphics, Inc.*, 909 F.3d at 1219; *Quad/Graphics*, 250 F. Supp 3d at 566.

## ARGUMENT

There is only one issue in dispute in this appeal, and it is purely a matter of statutory interpretation. There is nothing in the record particular to the instant case, including statements by fund actuaries or trustees, that has any bearing on the question of how the statute should be interpreted.[3]

---

[3] Perfection discusses the arbitration testimony of the Fund's administrator and actuary. Appellant's Br. pp. 27-32. But none of this testimony is relevant to the question of statutory interpretation at issue in this case. As the District Court below wrote, "[I]t does not find a witness's opinion about the actuarial sense of a calculation persuasive in interpreting the meaning of a statute." Dkt. 44, p. 27.

The question in dispute is as follows: As the District Court below held, should the statutory reduction for an employer's prior partial withdrawal be applied at the second step of the four-step statutory process for determining the amount of an employer's withdrawal liability? Or, as Perfection urges, is this reduction instead applied at some later point that is conspicuously left unmentioned in the statute?

Every court that has addressed this question — including the District Court below and a unanimous Ninth Circuit panel — has reached the same conclusion: The statutory language unambiguously requires that the reduction for an employer's prior partial withdrawal in accordance with 29 U.S.C. § 1386(b)(1) must be applied at the second step of the four-step process for determining withdrawal liability provided under 29 U.S.C. § 1381(b)(1). Dkt. 44, p. 21; *GCIU-Emp'r Ret. Fund v. Quad/Graphics, Inc.*, 909 F.3d at 1218, *aff'g* 250 F. Supp 3d at 565-66.

The second step of Section 1381(b)(1)'s four-step process calls for an adjustment "in the case of a partial withdrawal, in accordance with section 1386 of this title." 29 U.S.C. § 1381(b)(1)(B). Perfection's case rests entirely on rewriting this clear statutory language to make it say something that it does not. Perfection insists that Section 1381(b)(1)(B)

implicates only Section 1386(a) and not Section 1386(b). Appellant's Br. pp. 44-47. But the statutory text unequivocally refers to Section 1386 as a whole and makes no such distinction between its two subsections.

Perfection's misreading would apply the reduction for the prior partial withdrawal only after the completion of Section 1381(b)(1)'s four-step statutory process for determining withdrawal liability. As a result, under Perfection's interpretation, the reduction for the prior partial withdrawal would come after the application of the statutory 20-year cap (29 U.S.C. § 1399(c)(1)(B)), which all agree is applied at the third step of Section 1381(b)(1). 29 U.S.C. § 1381(b)(1)(C). Defendant's preferred methodology would have the effect of substantially decreasing its withdrawal liability, even though the 20-year cap already provides a reduction of its liability in the amount of nearly $10 million. Dkt. 31-3, pp. 5 and 8; Dkt. 31-4, pp. 5 and 8.

In support of its effort to rewrite the unambiguous statutory language, Perfection posits disagreements about the meaning of key statutory language where there are none. Appellant's Br. pp. 39 and 59. Perfection also mistakenly argues that the District Court's holding would make the statutory reduction for a prior partial withdrawal "illusory."

Appellant's Br. p. 37. Finally, Perfection urges that, if the statutory language were found ambiguous, then this Court should follow an opinion letter from the Pension Benefit Guaranty Corporation ("PBGC") that was issued nearly four decades ago and is due no deference beyond its ability to persuade — and that has been deemed to be unpersuasive by every court to have addressed the issue in contention. Appellant's Br. p. 69; Dkt. 44, p. 28; *Quad/Graphics, Inc.*, 909 F.3d at 1219; *Quad/Graphics*, 250 F. Supp 3d at 566.

The District Court below, endorsing the conclusion of every court and arbitrator that have addressed this issue, correctly analyzed the unambiguous statutory text in a well-reasoned and comprehensive decision, and this Court should uphold that decision.

## I.    THE DISTRICT COURT CORRECTLY FOUND THAT THE STATUTORY TEXT IS UNAMBIGUOUS

The District Court correctly determined that the relevant statutory provisions unambiguously require that the reduction of an employer's withdrawal liability based on that employer's prior partial

withdrawal in accordance with Section 1386(b)(1)[4] must be taken at the second step of the four-step process of adjustments outlined in Section 1381(b)(1). Dkt. 44, p. 21.

### A.    Section 1381(b)(1)(B)'s Second Adjustment Includes All Of Section 1386

The statutory text is very clear that the entirety of Section 1386 — including its reduction for an employer's prior partial withdrawal — is included in the second step of the four-step process provided for under Section 1381(b)(1). 29 U.S.C. § 1381(b)(1)(B).

The statutory four-step process for determining a withdrawing employer's withdrawal liability is set forth as follows:

> The withdrawal liability of an employer to a plan is the amount determined under section 1391 of this title to be the allocable amount of unfunded vested benefits, adjusted—
>> (A)  first, by any de minimis reduction applicable under section 1389 of this title,
>> (B)  next, in the case of a partial withdrawal, in accordance with section 1386 of this title,

---

[4] "In the case of an employer that has withdrawal liability for a partial withdrawal from a plan, any withdrawal liability of that employer for a partial or complete withdrawal from that plan in a subsequent plan year shall be reduced by the amount of any partial withdrawal liability (reduced by any abatement or reduction of such liability) of the employer with respect to the plan for a previous plan year." 29 U.S.C. § 1386(b)(1).

(C)   then, to the extent necessary to reflect the limitation on annual payments under section 1399(c)(1)(B) of this title, and
(D)   finally, in accordance with section 1405 of this title.

29 U.S.C. § 1381(b)(1).

The statute commands that these four required adjustments must be performed in sequence: The statutory text explaining the first adjustment begins with the word "first," 29 U.S.C. § 1381(b)(1)(A); the second adjustment with the word "next," 29 U.S.C. § 1381(b)(1)(B); the third adjustment with the word "then," 29 U.S.C. § 1381(b)(1)(C); and the fourth adjustment with the word "finally," 29 U.S.C. § 1381(b)(1)(D).

The dispute between the parties turns entirely on the interpretation of exactly one of these four subparagraphs, the one that governs the second adjustment, Section 1381(b)(1)(B). That subparagraph states that an adjustment is made "in the case of a partial withdrawal, in accordance with section 1386 of this title." 29 U.S.C. § 1381(b)(1)(B).

Perfection's entire argument is based on reading this subparagraph as referring to *only half* of Section 1386 — applying it only to Section 1386(a) and erasing Section 1386(b) from its purview.

15

Appellant's Br. pp. 44-47. As the District Court explained, "Perfection Bakeries' position is essentially that 'next, in the case of a partial withdrawal, in accordance with *section 1386* of this title' really means 'next, in the case of a partial withdrawal, in accordance with *section 1386(a)* of this title.'" Dkt. 44, p. 20. (Emphases in original). But the statute itself makes no such distinction between the two subsections of Section 1386, referring instead to Section 1386 in its entirety ("in accordance with section 1386 of this title"). 29 U.S.C. § 1381(b)(1)(B). That is why the District Court concluded that ""in the case of a partial withdrawal, in accordance with section 1386' incorporates all of § 1386, so that the partial withdrawal liability credit must be applied as part of the second potential adjustment." Dkt. 44, p. 21 (quoting 29 U.S.C. § 1381(b)(1)(B)); *see also Quad/Graphics*, F. Supp. 3d at 563 ("by its very terms, [Section 1381(b)(1)(B)] is not limited to adjustments only under certain subsections of § 1386").

If Congress had wanted to specify that it was referring only to one of Section 1386's two subsections, then "§ 1381(b)(1)(B) could easily have specified 'section 1386(a).'" Dkt. 44, p. 23; *see also Quad/Graphics*, F. Supp. 3d at 563 ("If Congress intended such a limitation, it could

clearly have provided for such.").[5] Indeed, in the very next subparagraph of Section 1381(b)(1), the statute's drafters showed that they knew how to specify a particular portion of a statutory section when they wanted to do so. *See* 29 U.S.C. § 1381(b)(1)(C). "The drafters did exactly that in the third potential adjustment, which specifies the applicable subsection, paragraph, and subparagraph of § 1399 to apply as an adjustment. *See* 29 U.S.C. § 1381(b)(1)(C)." Dkt. 44, p. 23. Noting this contrast, the District Court concluded: "This indicates that Congress's decision to incorporate all of § 1386 was deliberate, rather than oversight or an unwritten implication." Dkt. 44, pp. 23-24; *see also Quad/Graphics*, F. Supp. 3d at 563 ("the very next subsection of the same statute (i.e., § 1381(b)(1)(C)) specifically identifies the particular subsection of the statute to which it is referring (i.e., § 1399(c)(1)(B)), thus making clear that Congress' failure to do so under § 1381(b)(1)(B) was not simply an oversight.") (citing *Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a

---

[5] "Alternatively," the *Quad/Graphics* district court noted, another option would have been that "Congress could have placed the partial withdrawal credit in another section of the statute [other than Section 1386] entirely, which again would have made clear that § 1381(b)(1)(B) does not refer to the partial withdrawal credit." *Quad/Graphics*, F. Supp. 3d at 563.

statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (Internal citations and quotation marks omitted)).

In support of its counter-textual reading of Section 1381(b)(1)(B), Perfection scours the statute in search of textual continuities and discontinuities. Appellant's Br. pp. 41-43. But none of Perfection's roving textual examinations yield anything reflecting that Section 1386(b) should be excluded from the purview of Section 1381(b)(1)(B). And, as the 11th Circuit has noted — and as Perfection quotes in its own brief — "courts should not dig through layers of cross-references and then use what they have unearthed to replace the text of the provision right in front of them." *MSPA Claims 1, LLC v. Tenet Fla., Inc.,* 918 F.3d 1312, 1322 (11th Cir. 2019); Appellant's Br. p. 48.

Whereas Perfection cannot find anything in the statute limiting the applicability of Section 1381(b)(1)(B) to only one subsection of Section 1386, the District Court noted an additional statutory reference to this second step that again refers to the whole of Section 1386 as coming within its purview. "Similarly, § 1399(c)(1)(A)(i) — which

generally describes the 20-year cap — requires the fund to calculate the allocable amount of unfunded vested benefits under § 1391, 'adjusted if appropriate first under section 1389 of this title and then under section 1386 of this title.' As in § 1381(b), the reference is to § 1386 as a whole, not to any particular subsection of § 1386." Dkt. 44, pp. 24-25 (quoting 29 U.S.C. § 1399(c)(1)(A)(i).

It is clear that the second adjustment under Section 1381(b)(1)(B) unambiguously encompasses both subsections of 1386 — notwithstanding Perfection's pleas to rewrite the plain language of the statute.

### B. Adding The Section 1386(b) Reduction As A Fifth Step After The Section 1381(b)(1) Adjustments Would Be Inconsistent With The Statutory Language And Scheme

There is no basis in the statutory text for Perfection's attempt to remove the reduction for an employer's prior partial withdrawal from the second step of Section 1381(b)(1)'s four-step process. Further, there is similarly nothing in the text of the statute to support Perfection's argument that this reduction should instead be applied only after the conclusion of the statute's entire four-step process for determining

19

withdrawal liability. Indeed, Perfection essentially invents out of whole-cloth a fifth step in determining the amount of an employer's withdrawal liability — a counter-textual leap that is inconsistent with the finality that the statute ascribes to the determination of withdrawal liability under Section 1381(b)(1).

1. **The statute does not provide a fifth reduction, and Perfection's misinterpretation would leave the Section 1386(b) reduction orphaned in the overall statutory scheme.**

If the statute's drafters had intended for the reduction for a prior partial withdrawal under Section 1386(b) to be applied only after the completion of Section 1381(b)(1)'s four adjustments, they could easily have provided that direction in the statute itself. The fact that they did not do so speaks volumes. As the District Court pointed out, "Congress could also have included a fifth potential adjustment if it had intended for the credit to be applied at a different part of the calculation." Dkt. 44, p. 24.

Indeed, Perfection's misreading would leave the Section 1386(b) reduction for a prior partial withdrawal inexplicably orphaned within the larger statutory scheme. As discussed above, the clear

statutory language of Section 1381(b)(1)(B) refers to the operations under the whole of Section 1386 without distinction — to both of its subsections. But if Perfection's misinterpretation were to prevail, in which Section 1381(b)(1)(B) is supposed to refer to *only* 1386(a), then there would be nothing anywhere else in the statute that even references the reduction for a prior partial under 1386(b). Section 1381(b)(1) provides "a roadmap for calculating withdrawal liability," *Quad/Graphics,* 250 F. Supp 3d at 564, but Perfection's misreading would take the Section 1386(b)(1) reduction off the statutory map and leave it stranded in uncharted territory. The statute would no longer provide a complete map for determining the amount of withdrawal liability that an employer is required to pay.

> **2.    The statute emphasizes the finality of the four-step process for calculating withdrawal liability.**

The statutory language emphasizes the finality of the process provided under Section 1381(b)(1) for the determination of withdrawal liability, and it explicitly forecloses the possibility that the Section 1386(b)(1) reduction could be taken after the four steps are complete.

The District Court emphasized the significance of the section

governing the fourth and final adjustment made "in accordance with section 1405 of this title." 29 U.S.C. § 1381(b)(1)(D). Dkt. 44, pp. 24 and 26. The text of Section 1405 emphasizes its own finality,[6] particularly vis-à-vis any sections of the statute that numerically precede it — stating that its own adjustment addresses the unfunded vested benefits allocable to an employer "after the application of all sections of this part having a lower number designation than this section." 29 U.S.C. § 1405(a)(1). Because Section 1386 — including both of its subsections — has a lower number designation than Section 1405, the District Court concluded, "By its clear and unambiguous terms, § 1405(a)(1) requires application of *all* of § 1386 before the fourth potential adjustment can be applied." Dkt. 44, p. 24 (emphasis in original). Indeed, the District Court found that the plain language of Section 1405 makes Perfection's interpretation an impossibility. "[I]f the credit [for a prior partial withdrawal from Section 1386(b)] could not be applied at the second potential adjustment and could not be applied after the final adjustment, it could not be applied at all." Dkt. 44, p. 26.[7]

---

[6] Section 1405 addresses limitations on an employer's withdrawal liability in the event of an asset sale, liquidation, or dissolution. 29 U.S.C. § 1405.

[7] Perfection argues that Section 1405 is properly understood as referring only to a final "'adjust[ment]' to the allocable amount of unfunded vested benefits," whereas

Indeed, the finality of the four-step process of Section 1381(b)(1) in *defining* withdrawal liability is clear from the statute. Section 1381 defines "withdrawal liability"; it is titled "Withdrawal liability established; criteria and definitions." 29 U.S.C. § 1381. Section 1381(a) defines "withdrawal liability" as the "amount" for which an "employer is liable to a plan." 29 U.S.C. § 1381(a). And "for the purposes of subsection (a)" (29 U.S.C. § 1381(b)), the statute states: "[T]he withdrawal liability of an employer to a plan is the amount determined under section 1391 of this title to be the allocable amount of unfunded vested benefits, adjusted" by the four steps of Section 1381(b)(1). 29 U.S.C. § 1381(b)(1).

In other words, "withdrawal liability" — definitionally — is the amount for which an employer is liable, and it is fully determined by the adjustments directed by Section 1381. As one court noted, "§ 1381(b)(1) quite clearly lays out an all-inclusive sequence of adjustments

---

Section 1386(b)(1) "sets out a '"reduc[tion]' to 'withdrawal liability." Appellant's Br. p. 50. But Perfection's purported distinction collapses upon even a cursory review of the relevant statutory language. After all, the first of Section 1381(b)(1)'s four adjustments is described as "any de minimis *reduction* applicable under section 1389 of this title." 29 U.S.C. § 1381(b)(1)(A) (emphasis added). Indeed, each of the four Section 1381(b)(1) adjustments is a reduction to the amount of withdrawal liability.

to apply in determining withdrawal liability. In fact, an argument could be made that § 1381(b)(1) is not just a roadmap for calculating withdrawal liability, but actually defines 'withdrawal liability' for the purposes of that part of the MPPAA." *Quad/Graphics,* 250 F. Supp 3d at 564.

While Section 1381 is the section that defines an employer's withdrawal liability, the very next section addresses the action a pension fund must take with respect to that withdrawal liability. Section 1382 explicitly commands the plan sponsor to "notify the employer of the amount of the withdrawal liability, and … collect the amount of the withdrawal liability from the employer." 29 U.S.C. § 1382(2-3).

Perfection's insistence that the Section 1386(b)(1) statutory reduction for a prior partial withdrawal must be taken only *after* withdrawal liability has been determined pursuant to Section 1381(b)(1) is inconsistent with the statute's definition of "withdrawal liability" as the amount for which the "employer is liable." 29 U.S.C. § 1381(a). And it is, for the same reason, inconsistent with the statute's commandment that the "withdrawal liability" is the "amount" that the plan must "collect." 29 U.S.C. § 1382(3).

Instead, as a result of Perfection's misinterpretation, the "withdrawal liability" determined pursuant to the comprehensive four-step process of Section 1381(b)(1) would not be the amount for which an employer is liable and would not be the amount of which the plan sponsor must notify the employer and collect. Instead, under Perfection's misreading, whenever there has been a prior partial withdrawal, the "withdrawal liability" calculated pursuant to Section 1381(b)(1) is merely a provisional amount for which an employer is not actually liable and which cannot actually be collected. Rather, according to Perfection, whenever there was a prior partial withdrawal, then there must be one additional step — an additional step that is mentioned nowhere in Section 1381 or anywhere else in the statute — that yields some new amount that must be collected instead of the withdrawal liability calculated under Section 1381(b)(1).

By contrast, the District Court's holding — by following the unambiguous statutory language and performing Section 1386(b)(1)'s statutory reduction for a prior partial withdrawal at the second-step adjustment pursuant to Section 1381(b)(1)(B) — yields a final withdrawal liability amount for which an employer is actually liable and

25

that the fund can collect.

## C.    Perfection Misconstrues The Relationships Between Key Statutory Terms

Perfection argues that the District Court — and thus every adjudicator that has previously addressed the issue in contention here — fundamentally misunderstands foundational statutory terms.

Notably, Perfection suggests that the District Court simply does not grasp the difference between "withdrawal liability" on the one hand and "unfunded vested benefits" on the other, and that the District Court also conflates a "partial withdrawal" with a "complete withdrawal." Appellant's Br. pp. 40 and 55-56. However, Perfection's arguments here are red herrings.

### 1.    Perfection misunderstands the process for calculating withdrawal liability via the adjustments to unfunded vested benefits.

Perfection asserts that the District Court's ruling failed to distinguish between unfunded vested benefits and an employer's withdrawal liability: "Despite the intrinsic difference between the allocable amount of unfunded vested benefits and withdrawal liability,

the District Court's ruling erroneously treats the two terms as equivalent." Appellant's Br. p. 40.

But the fact that these two terms have different meanings is not actually in dispute. Indeed, the District Court notes that these two terms have distinct meanings.[8] Dkt. 44, p. 7. What is really in dispute is the nature of the process by which a withdrawing employer's allocable amount of unfunded vested benefits generates the amount of withdrawal liability that may be collected from that employer by a multiemployer pension plan.

In essence, Perfection's argument in this regard boils down to the following: The statutory instruction that "withdrawal liability … shall be reduced by the amount of any partial withdrawal liability" (29 U.S.C. § 1386(b)(1)) means that withdrawal liability must be fully calculated and only then reduced by the prior partial withdrawal liability. Appellant's Br. p. 22.

However, there is a more common-sense reading of Section 1386(b)(1) that is consistent with the unequivocal import of Section

---

[8] Perfection ultimately concedes that the District Court acknowledged the distinction between these terms. Appellant's Br. p. 39 n.15.

1381(b)(1). In short, the reference in Section 1386(b)(1) to the reduction of withdrawal liability by the amount of a prior partial withdrawal simply means that the prior partial is one of the adjustments that generate the final calculation of withdrawal liability. Indeed, each of the steps in Section 1381(b)(1) — including Section 1386(b)(1)'s reduction for a prior partial withdrawal and the 20-year cap under Section 1399(c)(1)(B) — is an adjustment necessary to calculate the withdrawal liability, which is only fully calculated once all four adjustments have been applied. And all four of the adjustments in Section 1381(b)(1) are *reductions* to the employer's eventual withdrawal liability.

It is clear from the statutory language that the reduction of an employer's withdrawal liability can be referenced prior to the conclusion of the four steps of Section 1381(b)(1), and in fact throughout the four-step process. Significantly, the statutory provision providing for a 20-year cap on withdrawal liability states that "the *employer's liability* shall be limited to the first 20 annual payments." 29 U.S.C. § 1399(c)(1)(B) (emphasis added).[9] And there is no dispute that the 20-year cap is applied

---

[9] The Supreme Court described this same subsection, 1399(c)(1)(B), as a statutory provision that "forgives all debt outstanding after 20 years." *Milwaukee Brewery Workers' Pension Plan v. Jos. Schlitz Brewing Co.*, 513 U.S. 414, 419 (1995). It is true that the District Court below found that *Schlitz* did not amount to a holding as to the

at step three of the four-step process. 29 U.S.C. § 1381(b)(1)(C). Accordingly, at the third step of Section 1381(b)(1), there is already reference to an "employer's liability" that is being "limited." 29 U.S.C. § 1399(c)(1)(B).[10]

    With respect to Section 1386(b)(1), Perfection is mistaken to insist that one cannot reference the reduction to an employer's withdrawal liability until all four steps of Section 1381(b)(1) are complete. Rather, Section 1381(b)(1) is a process by which withdrawal liability is calculated — a process that has a beginning, a middle, and an end. The process begins with an amount of unfunded vested benefits and concludes with the amount an employer must actually pay. As soon as the Section

---

meaning of the term "withdrawal liability." Dkt. 44, p. 21. However, it is telling that *Schlitz* points to the 20-year cap (Section 1399(c)(1)(B)) with reference to an employer's debt or liability. As argued herein, all four steps of Section 1381(b)(1) must be completed in order to fully calculate withdrawal liability; nonetheless, in each of the four steps, an employer's withdrawal liability is undeniably being reduced. Consistent with the obvious meanings of Sections 1386(b)(1) and 1381(b)(1)(B), the credit for a prior partial withdrawal is just one of several reductions to withdrawal liability that take place during the four-step process.

[10] Perfection, in its previous briefing before the District Court below, went so far as to argue that "the 20-year cap adjusted *unfunded vested benefits*, it did **not** reduce Perfection's *withdrawal liability* by even a penny." Dkt. 40, p. 6 n.4 (emphasis in original). But elsewhere in its briefing before the District Court, Perfection asserted that the 20-year cap "*limits* potential debt." Dkt. 32, p. 45 (emphasis in original). Regardless of the distinction Perfection attempts to draw between "reducing" and "limiting" debt, or between "debt" and "potential debt," Perfection's discussion of the 20-year cap is an acknowledgment that an employer's debt or liability is being addressed throughout the four-step process of Section 1381(b)(1).

1381(b)(1) process begins, and an employer's allocable amount of unfunded vested benefits is adjusted by the first relevant step, it is no longer simply the unfunded vested benefits that are in play; rather, the calculation of the employer's withdrawal liability has commenced. Between input and output, there is a calculation process, each step making reductions (or downward adjustments) to an employer's liability. The reduction for a prior partial withdrawal is part of that process — as Section 1381(b)(1)(B) makes clear, its second step.

### 2. Perfection misinterprets the phrase "in the case of a partial withdrawal".

Perfection claims that the District Court misinterpreted the phrase "in the case of a partial withdrawal" in Section 1381(b)(1)(B), but it is actually Perfection that misunderstands this phrase in the context of that subparagraph.

Perfection argues that the Fund's reading of the statute, which was endorsed by the District Court's holding, "radically and impermissibly enlarges the statutory definition of 'partial withdrawal' to include a situation where (as here) a plan is calculating a *complete*

*withdrawal*." Appellant's Br. p. 59. (Emphasis in original.) Relatedly, Perfection alleges that the District Court "expanded the definition of 'partial withdrawal' to include the partial withdrawal *credit*." Appellant's Br. p. 58. (Emphasis in original.)

Perfection devotes a substantial amount of space to this argument, but it is a red herring. Neither the District Court nor the Fund is "enlarging" or "expanding" the definition of "partial withdrawal." Indeed, there's no dispute whatsoever over the meaning of a "partial withdrawal." As Perfection states, "a partial withdrawal is not a complete withdrawal, and vice versa." Appellant's Br. p. 56.

Perfection mistakenly claims that step two of 1381(b)(1) references a partial withdrawal and so "cannot apply in the case of a complete withdrawal (as defined by Congress)." Appellant's Br. p. 58. Yet the *Quad/Graphics* district court found that both Sections 1381 and 1386(b)(1) reference the identical set of circumstances, namely, a prior partial withdrawal followed by a subsequent "partial or complete withdrawal" (Section 1386(b)(1)); and, "a complete withdrawal or a partial withdrawal" (Section 1381(a)). 250 F. Supp 3d at 563-64. Therefore, the circumstances of Perfection's withdrawal here, in which a

partial withdrawal was followed by a complete withdrawal, are contemplated precisely by Sections 1381 and 1386(b)(1). Accordingly, contrary to Perfection's argument, the Fund's reading of Section 1381(b)(1)(B) does not conflate a partial withdrawal and a complete withdrawal; rather, it adheres to the straightforward meaning of the relevant statutory provisions.

The only genuine dispute is what the phrase "*in the case of a* partial withdrawal" (emphasis added) means in the context of Section 1381(b)(1)(B). Perfection asserts that this phrase cannot reference a credit for a prior partial withdrawal. Appellant's Br. p. 58. Yet, a prior partial withdrawal undeniably falls under 29 U.S.C. § 1385 (the section of the statute that defines "partial withdrawal"), just as does a current one. As the District Court concluded, "Interpreting 'in the case of a partial withdrawal' to trigger application of the adjustment whenever a partial withdrawal *has occurred* or *is occurring* is consistent with the plain language of § 1381(b)(1)(B) and the MPPAA as a whole." Dkt. 44, p. 26 (emphasis in original).[11]

---

[11] The *Quad/Graphics* district court agreed with the District Court in the instant case, noting the congruity between the language of Section 1381(b)(1)(B) and Section 1386(b)(1):

The District Court offered a sound analysis to support its conclusion. Dkt. 44, p. 26. Here, it is simply worth emphasizing that the District Court's analysis of "in the case of a partial withdrawal" is corroborated by the words that immediately follow, "in accordance with section 1386 of this title." 29 U.S.C. § 1381(b)(1)(B). The two subsections of Section 1386 are applicable, respectively, to the calculation of a current partial withdrawal (1386(a)) and to a case in which there had been a prior partial withdrawal (1386(b)).[12] The District Court's interpretation is,

---

> [T]he congruity in the language between § 1381(b)(1)(B) and § 1386(b)(1) convinces the Court that Congress affirmatively intended for the former to refer to the latter. Section 1381(b)(1)(B) applies "in the case of a partial withdrawal." Section 1386(b)(1), in turn, states that the partial withdrawal credit applies "[i]n the case of an employer that has withdrawal liability for a partial withdrawal from a plan." This similarity in language substantially undermines Quad's argument that the phrase "case of partial withdrawal" in § 1381(b)(1)(B) refers only to the specific withdrawal assessment being calculated rather than to any situation where a partial withdrawal may impact the assessment being calculated.

250 F. Supp 3d, at 563-64.

[12] Perfection objects to the District Court's reasoning on the basis that "there is no instance where a partial withdrawal 'is occurring' at the time of its calculation." Appellant's Br. p. 55. But this is really just quibbling over semantics. Clearly, the District Court meant that Section 1381(b)(1)(B) employs the phrase "in the case of a partial withdrawal" to refer to circumstances where a *prior* partial withdrawal had occurred *and* to circumstances where the calculation of a *current* partial withdrawal is at issue.

therefore, consistent with the rest of the subparagraph and with the overall statutory scheme.

To challenge the District Court's interpretation, Perfection again roves around the statute and identifies three other instances in which the phrase "in the case of a partial withdrawal" appears, citing 29 U.S.C. § 1386(a)(1)(B) and (a)(2)(B)(ii), as well as 29 U.S.C. §1399(c)(1)(E). Perfection suggests that the phrase's meaning in those three appearances differs meaningfully from the District Court's reading of Section 1381(b)(1)(B). Appellant's Br. p. 60.[13] However, as discussed

---

[13] In Perfection's previous briefing before the District Court, it argued that the phrase "in the case of a partial withdrawal" appears in certain subsections of 1386(a) but not in 1386(b). Dkt. 32, pp. 34-35. As a threshold matter, as discussed in footnote 11 above, there is actually a congruity in this regard between the language of Section 1381(b)(1)(B) and Section 1386(b)(1). Further, within Section 1386(a), this phrase is found only in Section 1386(a)(1)(B) and Section 1386(a)(2)(B)(ii). Both of these apply specifically to partial withdrawals based upon a 70% decline in contributions as described in 29 U.S.C. § 1385(a)(1) and not in the equivalent clauses of Section 1386(a)(1)(A) and Section 1386(a)(2)(B)(i) applying to partial withdrawals stemming from a partial cessation of an employer's contribution obligation as described in Section 1385(a)(2). If Section 1381(b)(1)(B) were written to precisely mirror Section 1386(a) alone, it is inexplicable that the phrase "in the case of a partial withdrawal" would appear only in the clauses of Section 1386(a) regarding partial withdrawals based on a 70% decline and not in the clauses regarding partial cessation of an employer's contribution obligation. Indeed, Perfection's prior partial withdrawal in this case was based on a partial cessation and not on a 70% decline. Yet, both types of partial withdrawals should apply to the Section 1381(b)(1)(B) adjustment. Moreover, after each reference in Section 1386(a)(1)(B) and Section 1386(a)(2)(B)(ii), the phrase "in the case of a partial withdrawal…" is immediately followed by the words: "…described in section 1385(a)(1) of this title." Clearly, the sole purpose of this phrase in Section 1386(a) is to specify the type of partial withdrawal to which these two clauses apply. Dkt. 41, p. 9.

34

above, the District Court properly interpreted the phrase "in the case of a partial withdrawal" in its context in Section 1381(b)(1)(B), where that phrase is immediately followed by "in accordance with section 1386 of this title." 29 U.S.C. § 1381(b)(1)(B). *See MSPA Claims 1,* LLC, 918 F.3d at 1322 ("[C]ourts should not dig through layers of cross-references and then use what they have unearthed to replace the text of the provision right in front of them.").

Finally, Perfection further asserts that the District Court's reading of the phrase "in the case of a partial withdrawal" renders it "superfluous." Appellant's Br. pp. 62-63. Perfection argues that, under the District Court's interpretation, the omission of this phrase from Section 1381(b)(1)(B) would not have changed the Fund's method of calculation. Appellant's Br. p. 62-63. However, the statute's description of the adjustments that both immediately precede and follow the second-step adjustment also includes language that could be omitted without changing their operation.

In the first adjustment, the words "de minimis" could be deleted from the phrase "by any de minimis reduction applicable under section 1389 of this title" without changing the nature of the adjustment.

35

29 U.S.C. § 1381(b)(1)(A). Similarly, in the third adjustment (the 20-year cap), the words "to reflect the limitation on annual payments" could be deleted from the phrase "to the extent necessary to reflect the limitation on annual payments under section 1399(c)(1)(B) of this title" without changing the nature of that adjustment. 29 U.S.C. § 1381(b)(1)(C).

In sum, the fact that Section 1381(b)(1)(B) describes the Section 1386 adjustments as implicating cases of partial withdrawal is no different from how Section 1381(b)(1)(A) explains that the nature of the Section 1389 adjustment is a "de minimis" reduction or how Section 1381(b)(1)(C) explains that Section 1399(c)(1)(B) involves a "limitation on annual payments." Such text serves the purpose of being explanatory and descriptive.

## II. PERFECTION INCORRECTLY ASSERTS THAT THE DISTRICT COURT'S INTERPRETATION MAKES THE REDUCTION FOR A PRIOR PARTIAL WITHDRAWAL "ILLUSORY"

Perfection is incorrect to argue that applying the reduction for a prior partial withdrawal at the second step of Section 1381(b)(1) makes the reduction "illusory." Appellant's Br. pp. 37 and 66.

As a result of the particular circumstances in the instant matter, it is true that the reduction at step two based upon Perfection's prior partial withdrawal was rendered moot by the even larger reduction applied under step three for the 20-year cap. However, that does not mean that effecting the reduction for a prior partial withdrawal at the second step of Section 1381(b)(1) would necessarily make the adjustment "illusory." There are circumstances in which a 20-year cap might not apply, e.g., for employers whose liability can be amortized over fewer than 20 years, or in the case of a mass withdrawal. 29 U.S.C. § 1399(c)(1)(D). There are also circumstances where the 20-year cap would yield a smaller reduction than the partial credit. For example, this might be the case where — in the absence of the 20-year cap — the employer's liability would otherwise extend over only twenty-one years. For such employers, a step two reduction for a prior withdrawal would have significance. The particular circumstances in the instant case should not determine the reading of statutory language.

In any case, Section 1386(b)(1) does not promise an actual reduction in the amount of withdrawal liability based upon the prior withdrawal. The credit can, in fact, be as low as zero. As the PBGC's own

regulation notes, the credit for the prior partial withdrawal should be "in an amount greater than *or equal to zero*." 29 C.F.R. § 4206.3 (emphasis added). In the instant case, the Fund ultimately reduced the assessment by about $2 million at step two, and the "problem" Perfection is seeking to remedy is the fact that the subsequent application of the 20-year cap at step three effected a substantially *larger* reduction to Perfection's withdrawal liability that overcame its prior reduction for the partial credit. Indeed, after the reduction at step two for its prior partial withdrawal credit, Perfection received an additional nearly $10 million reduction under the 20-year cap. Dkt. 31-3, pp. 5 and 8; Dkt. 31-4, pp. 5 and 8. Perfection, however, is not satisfied with this huge reduction in its withdrawal liability.

As the regulations make clear, the statute does not promise an actual reduction of more than zero for the partial withdrawal credit. The fact that Perfection received a larger discount from the 20-year cap that subsumed the smaller discount from the partial credit does not render the latter illusory; it is simply the functioning of the balance between the interests of plans and employers that ERISA anticipated,

38

which can result in different outcomes for different employers depending upon their particular circumstances.

Moreover, unambiguous statutory language cannot be rewritten by a court to address a policy concern. As the District Court noted, "even if the formula mandated by Congress were unfair or inconsistent, it is not the place of the court to rewrite or interpret the statute purposively to correct a perceived flaw in it." Dkt. 44, p. 27 (citing *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2381 (2020) ("[A] policy concern cannot justify supplanting the text's plain meaning. It is not for us to rewrite the statute so that it covers only what we think is necessary to achieve what we think Congress really intended.") (citation and quotation marks omitted)).

## III.  THE PBGC'S VIEW IS TRUMPED BY THE UNAMBIGUOUS STATUTORY LANGUAGE AND, IN ANY EVENT, IS UNPERSUASIVE

Insofar as the statutory language is unambiguous — as every court to address this issue has found — then the Pension Benefit Guaranty Corporation's views are irrelevant to the outcome of this case.

"We recognize that agency opinion letters interpreting regulations are to be given deference 'only when the language of the regulation is ambiguous.'" *Gilbert v. Alta Health & Life Ins. Co.,* 276 F.3d 1292, 1304 (11th Cir. 2001) (quoting *Christensen v. Harris County*, 529 U.S. 576, 588 (2000)).

But even if the statute were ambiguous, the PBGC's views as articulated in opinion letters are due only very limited deference. *Christensen*, 529 U.S. at 587. Instead, "interpretations contained in formats such as opinion letters are 'entitled to respect' under our decision in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), but only to the extent that those interpretations have the 'power to persuade.'" *Christensen*, 529 U.S. at 587 (quoting *Skidmore*, 323 U.S. at 140).

Perfection quotes a 1988 11th Circuit case, *Blessitt v. Retirement Plan for Employees of Dixie Engine Co.* 848 F.2d 1164, 1172 (11th Cir. 1988), which stated: "[W]e owe particularly great deference to PBGC interpretations of Title IV of ERISA." Appellant's Br. p. 69. However, since then the Supreme Court has made clear the limited level of deference that should be accorded to opinion letters of the sort relied upon by Perfection. *Christensen*, 529 U.S. at 587. Perfection

acknowledges as much in its brief, citing *Gregory v. First Title of America, Inc.*, 555 F.3d 1300, 1302 (11th Cir. 2009) (agency opinion letters are "entitled to respect … to the extent that those interpretations have the power to persuade."). Appellant's Br. p. 71.

Perfection cites a pair of PBGC opinion letters in support of its position. Appellant's Br. p. 69. The more recent of these two letters is just shy of four decades old. Opinion Letter 85-4 (Jan. 30, 1985). The newer letter has been found to be unpersuasive by every court that has examined the question. Dkt. 44, p. 28; *Quad/Graphics, Inc.*, 909 F.3d at 1219; *Quad/Graphics*, 250 F. Supp 3d at 566. The PBGC's 1985 opinion letter "does not purport to rely on agency expertise, but merely misconstrues the plain language of §1381." *Quad/Graphics*, 909 F.3d at 1219; *see also Quad/Graphics,* 250 F. Supp 3d at 566 ("The PBGC's opinion does not address the myriad arguments that cut strongly against its interpretation, and the PBGC does not appear to rely on any specialized knowledge or expertise in reaching its conclusion. Rather, the agency appears simply to interpret (in a very curt fashion) the plain language of the statute — something that an Article III court is at least as well equipped to do as the PBGC."). The earlier PBGC letter cited by

41

the Perfection offers essentially no analysis of the issue in dispute. Opinion Letter 82-35 (Nov. 15, 1982).

Finally, Perfection cites to regulations promulgated by the PBGC, 29 C.F.R. § 4206.1(a) and 29 C.F.R. § 4206.3. Appellant's Br. pp. 72-73. Neither regulation, however, resolves the issue in contention, namely: At what point in relation to the four-step process for calculating withdrawal liability should the reduction for a prior partial withdrawal be applied? Indeed, neither even references Section 1381. The latter regulation states only that an employer previously assessed withdrawal liability for a prior partial withdrawal "shall receive a credit against the new withdrawal liability in an amount greater than or equal to zero." 29 C.F.R. § 4206.3. Other than noting that the credit could be "equal to zero," its language essentially parallels that of the statute. As noted above, the clear import of the statute, like the regulation, is that the partial withdrawal credit is one of the adjustments generating the final calculation of withdrawal liability.

## CONCLUSION

Respectfully, this Court should affirm the judgment of the District Court.

Dated: February 15, 2024

                        Respectfully submitted,


                        _____/s/ William Anspach_____
                        William Anspach

                        Friedman & Anspach
                        1500 Broadway, Suite 2300
                        New York, New York 10036
                        (212) 354-4500
                        wanspach@friedmananspach.com

                        *Counsel for Defendant-Appellee*
                        *Retail, Wholesale and Department*
                        *Store International Union and*
                        *Industry Pension Fund*

43

## <u>CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32</u>

The undersigned, counsel of record for Defendant-Appellee Retail, Wholesale and Department Store International Union and Industry Pension Fund, furnishes the following in compliance with Federal Rule of Appellate Procedure 32(g)(1).

I hereby certify that this brief complies with the type-volume limit in Federal Rule of Appellate Procedure 32(a)(7)(B)(i) excluding the parts exempted by Federal Rule of Appellate Procedure 32(f). The length of this brief is 8,563 words. This document has been prepared in a proportionally spaced typeface, using Word with 14pt Century Schoolbook.

Dated: February 15, 2024

<u>/s/ William Anspach</u>
William Anspach

*Counsel for Defendant-Appellee*